Caldwell, J.
We find no evidence in this case that the complainants have ever been prevented from residing on the homestead, and consequently, the only question presented for consideration, is, whether, by the provisions of the will, they are entitled to their maintenance from it. It will be seen that the devise of the homestead farm to the three sons and their heirs, is absolutely made, with the single proviso, that if any of testator’s daughters should remain unmarried, they should not be deprived of a home on it.
On the part of complainants, it is contended that the term home, as here used, implies, not only a place of residence, but also, a right to maintenance. The term home, generally means nothing more than the place where a person has his habitation — his place'of residence. The habitation or home may be, and often is, at one place, and the means of support at another; there is no necessary connection between them. If the proviso had been made in favor of persons, who, when the contingency might happen, would be unable to support themselves, and who would necessarily have to depend on the care and support of others, there would be more force in the suggestion that the term home should be taken in the comprehensive sense contended for. It is not a *285 proviso in favor of those who might become sick or disabled, or from any cause might need the personal assistance of others, “ but in case they should remain unmarried.” The testator had provided that his wife should enjoy the homestead during her life, provided she remained his widow. It is also clearly expressed in his will, that he expected their children to live with her. In case of her death, the three sons were to take possession of the farm, and enjoy it; but the unmarried daughters, who might reasonably be expected to be living with their mother at her death, were not to be disturbed in their right to a home, on account of the change of owners. The evidence • in the case shows that the complainants were raised to habits of industry, and that they have maintained themselves by their own exertions.
Although the compensation for a female’s labor is small, yet every one acquainted with the farming community knows, that the labor of the female part of the community is worth more than the cost of their support, and that when in health, they are a burden on no one. Besides, the testator had devised property to all his children; he had made provision for his sons and daughters separately, and a portion of his property he had divided amongst all his children equally: what amount came to each one we have no means of ascertaining; it may have been a fair and sensible division of his property, or it may not. We have only the value of the piece of property' about which the present controversy arises: it is said to be worth about $2,500, and the annual value, from $75 to $80. The yearly value of each of the sons’ share would be from $25 to $27. Now this amount is so small, that, in the absence of any terms necessarily expressing it-, we think it could not reasonably be inferred, after dividing it amongst his sons, that it should be charged with the support of his unmarried daughters; the whole amount would be insufficient to maintain them, if they had to depend on it solely for support, and might leave the devise to the sons wholly valueless. As good brothers, the defendants are morally bound to support their sisters, if in need, *286 to the extent of their ability; but we do not think that the will makes their maintenance a charge on the farm; we think it merely gives them a right to live on it, and as there is no evidence that they have been deprived of this right, the bill must be dismissed.